IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
MAR 31 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| WILLIE M. BLANCH, III | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number |
| | ) 01-C-0013-S |
| BETTY GAMBLE, Chief of Police, and | ) |
| CAPTAIN. BILLY ROBERTS, | ) |
| Defendants. | ) |

ENTERED
APR - 1 2002

## MEMORANDUM OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 filed by the plaintiff, Willie M. Blanch, alleging that his constitutional rights were violated while he was incarcerated in the Fairfield City Jail in Fairfield, Alabama. In his *pro se* amended complaint, Plaintiff names "Capt. Roberts" (whose true name is "Billy Roberts") as a defendant.[1] He contends that Defendant Roberts was deliberately indifferent to his serious medical needs. As compensation for the alleged constitutional violation, Plaintiff seeks injunctive relief in the form of proper medical attention.

In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1), the complaint was referred to the magistrate judge for a preliminary review and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

---

[1] The complaint also named Fairfield City Police Chief Betty Gamble as a defendant. On April 16, 2001, the magistrate judge recommended that all claims against defendant Gamble be dismissed. On May 15, 2001, this Court adopted the report and recommendation of the magistrate judge, and dismissed all claims against Police Chief Betty Gamble.

The magistrate judge entered an Order for Special Report (Document # 11) directing that copies of the amended complaint in this action be forwarded to the Defendant and requesting that he file a special report addressing the factual allegations of the Plaintiff's complaint. The Defendant was advised that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, Plaintiff was advised that after he received a copy of the Special Report submitted by the Defendant, he should file counter affidavits if he wished to rebut the matters presented by the Defendant in the special report. Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the Defendant's Special Report.

The Defendant filed a Special Report accompanied by affidavits and documentary evidence. Plaintiff was thereafter notified that the Court would consider the special report to be a motion for summary judgment. In the Court's Order dated August 16, 2001, Plaintiff was instructed that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose to do so. *See* (Court Order, Document # 15). Plaintiff was also advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *Id.* Plaintiff filed no response.

### A. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light

most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues, and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett, supra*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## B. FACTUAL ALLEGATIONS

1. Plaintiff's Amended Complaint

In his amended complaint, Plaintiff contends that he "was denied medical atention [sic] by Capt. Roberts on [November 15, 2000]. (Plaintiff's Amended Complaint, Document #7 at 1.) Specifically, Plaintiff states that "on November 15, 2000, the Paramedic came and told Officer Rogers that I needed my medication." *Id.* at 1. Plaintiff also states the paramedic told them to "take me to the hospital to see my doctor so I could get my [medicine]. I have high blood pressure and pancreatitis." *Id.* at 8.

Plaintiff further states that, on November 17, 2000, "Correction Officer Rogers took me to the emergency room at Healthsouth Metro West Hospital. the [sic] doctor there worte [sic] me a presciption [sic] for the pain I was haveing [sic]." *Id.* at 1. Plaintiff continues in his complaint stating that, On November 20, 2000, "Capt. Roberts called the doctor at Healthsouth and had my presciption [sic] changed." *Id.* Furthermore, Plaintiff asserts "I went to see my doctor because I had an appontment [sic], and he wort [sic] me another prescription for my pain, [b]ut Capt. Roberts told me that he wasn't going to get it filled for me." *Id.* at 2. On February 15, 2001, the date the Plaintiff penned his amended complaint, he complains that every time he asks to see the paramedics,

> they take [their] time . . . doing it. I'm in [a lot] of pain. My condition has gotten worse now. They won't buy my medication no more and I just sit back here in a lot of pain. My condition is called [pancreatitis] and I need help. I'm indigent and I can't afford my medication, because I'm still locked up in Fairfield City Jail, and I need some medication.

*Id.*

2. Defendant's Special Report

The Defendant's Special Report asserts that Plaintiff "was booked into the Fairfield City Jail on 15 November 2000, at 4:16 p.m., on a [c]harge of 'Failure to Appear.'" (Defendant's Special Report Document # 14 at 1.) "Intake personnel at the Fairfield City Jail promptly informed Chief Roberts of Mr. Blanch's complaints of illness and of the need for medication. In response to the Plaintiff's request for medication, Deputy Chief Roberts contacted the Jefferson County Jail [where Plaintiff had been incarcerated immediately prior to his transfer to Fairfield City Jail], for the purposes of determining whether any medications that Plaintiff had been taking while incarcerated with [Jefferson County] were left over and whether Plaintiff could receive same." *Id.* at 1-2. Deputy Chief Roberts was informed by Jefferson County Jail personnel that the Plaintiff could not receive any of the medications that he was taking while at Jefferson County Jail because it had been returned to the infirmary upon the Plaintiff's departure. *See id.* at 2. Defendant Roberts would have allowed the Plaintiff the opportunity to contact his personal physician on November 15, 2000, as well, but by the time Defendant Roberts was informed of the Plaintiff's request, the "professional offices at the Hospital were closed." *Id.*

On November 16, 2000, Defendant "Roberts permitted Plaintiff to contact his personal physician." *Id.* Roberts also "provide[d] the transportation for Plaintiff to attend his Doctor's appointment . . . [and] he authorized medication, prescribed by Plaintiff's own physician, to be purchased for and to be dispensed to Plaintiff." *Id.* The Defendant explains the two (2) day delay in the Plaintiff's receipt of his prescribed medication by stating, "the City . . . utilizes the services of a pharmacy that is not open until all hours of the night . . . . [and] the Payless Drug Store . . . was closed by the time that Mr. Blanch returned to the Jail, at 7:35 P.M., from his physician's visit at the

5

Metro West Hospital." *Id.* at 3. Further, the Defendant argues in its motion that the prescriptions were not filled "on Saturday, 18 November 2000 or on Sunday, 19 November 2000 because [there were] no personnel . . . authorized to direct that the prescriptions be filled at the jail. Consequently, the prescriptions were filled on . . . Monday, 20 November 2000." *Id.* After the prescriptions were filled, the medication was dispensed regularly to the Plaintiff. *Id.*

The affidavit of Defendant Roberts sheds additional light on the subject. Roberts states that "Dr. Flemming was unable to see Plaintiff before Friday, 17 November, 2000, and on that date, at 3:20 p.m. an officer escorted Blanch to his appointment with Dr. Flemming." (Roberts Aff. ¶2). Roberts attests that after the Plaintiff's appointment with Dr. Flemming, he learned that the medication prescribed for the Plaintiff cost $100.00. *Id.* On November 20, 2000, Defendant Roberts stated he "asked the doctor for a less expensive medicine . . . [and] he wrote a prescription for an alternate medication . . . ." *Id.*

### C. REQUEST FOR INJUNCTIVE RELIEF

As a remedy for the alleged constitutional violation against him, Plaintiff states, "I would like the courts to help me get rel[ie]f in this matter." (Plaintiff's Amended Complaint, Document # 7, at 8.) The Court has confirmed that Plaintiff is no longer incarcerated in the Fairfield City Jail. As such, Plaintiff's requests for injunctive relief are MOOT. "Absent class certification, an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred" or released. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). "Past exposure to [alleged] illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real

6

and immediate threat of repeated injury." Thus, to the extent Plaintiff seeks injunctive relief, it is moot.

### D. CRUEL AND UNUSUAL PUNISHMENT

Although not explicitly sought by the amended complaint, the Court also will construe the complaint as seeking monetary damages from Defendant Roberts. The Court notes that the amended complaint was filed after Plaintiff was being supplied with medication, making any claim for injunctive relief moot. Thus, it makes sense to construe the complaint as seeking another form of relief, damages.

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229, 231(5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

A jail official violates a pretrial detainee's Fourteenth Amendment right to due process and a convicted person's Eighth Amendment protection against cruel and unusual punishment if he acts with deliberate indifference to the serious medical needs of the inmate.[2] *See, e.g., Thomas v. Town*

---

[2] A government official's treatment of a pretrial detainee is governed by the due process clause of the Fourteenth Amendment, *see Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S. Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979), while the cruel and unusual punishment clause of the Eighth Amendment governs an officials' treatment of a convicted prisoner. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The Eleventh Circuit has held that the minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both

*of Davie*, 847 F.2d 771, 772 (11th Cir. 1988)(citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)). Specifically, an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994)("[K]nowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference."); *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir. 1988)("[W]ith evidence of knowledge [of the prisoner's need for medical care] the jury could have concluded that the failure to provide Carswell with medical care constituted deliberate indifference."); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[K]nowledge for the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference").

Deliberate indifference can be shown in a variety of ways. As the Eleventh Circuit noted in *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995):

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. "A doctor's decision to take an easier and less efficacious course of treatment" also constitutes deliberate indifference. Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference. (citations omitted)

---

the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate in difference to serious medical needs. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

The Eleventh Circuit also held in *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir.), *vacated*, 931 F.2d 711 (11th Cir. 1991), *reinstated by unpublished order* (June 24, 1991), cited in *Howell v. Burden*, 12 F.3d 190, 191(11th Cir. 1994):

> The standard for deliberate indifference focuses on the failure to provide or allow proper treatment in the face of information which reasonably should compel action. Such deliberate indifference is often manifest by a refusal to act when certain actions were or should have been known to be necessary, rather than simply a failure to act.

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. *See Hill*, 40 F.3d at 1186 ("cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem"); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994) (sheriff was not entitled to qualified immunity where he intentionally delayed treatment that sheriff knew had been prescribed for inmate's serious medical needs); *Thomas,* 847 F.2d at 773 (failure to provide prompt attention to serious medical needs by delaying medical treatment for non-medical reasons constitutes deliberate indifference). Delay in access to medical treatment can violate the Eighth Amendment, *Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291, when it is "tantamount to 'unnecessary and wanton infliction of pain,'" *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir) *per curiam*, *cert. denied*, 496 U.S. 928, 110 S. Ct. 2624, 110 L.Ed.2d 645 (1990).[3]

---

[3] Reiterated in *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). Also cited in *McElligott*, is *Aldridge v. Montgomery*, 753 F.2d 970, 972-73, (11th. Cir. 1985) wherein a directed verdict in favor of the defendants was reversed because "officers failed to provide an ice pack and

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187-88. A medical need is considered serious when delay results in an inmate's suffering "a lifelong handicap or permanent loss." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill, supra*, at 1188. Further, whether the length of the delay establishes deliberate indifference "depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994). Therefore, a delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Pancreatitis is a serious medical need. This Court finds, as a matter of law under the facts of the present case, the Defendant in this action had notice of the Plaintiff's serious medical condition, and was aware of Plaintiff's need for medication to allieve that condition. Whether Defendant Roberts was deliberately indifferent to the Plaintiff's needs is the next question.

It is undisputed that Defendant Roberts was unable to obtain the Plaintiff's medication from Jefferson County Jail on the evening the Plaintiff was arrested and could not schedule an appointment with the Plaintiff's physician because the professional offices were closed. It is undisputed that Roberts made an appointment for the Plaintiff to visit with his physician based upon the physician's availability, and also ensured that the plaintiff was transferred to that appointment.

---

aspirin for pain caused by bleeding cut."

Finally, it is undisputed that Plaintiff returned to the jail from his appointment with a prescription for medication.

Plaintiff and Defendant's version of events do differ significantly in several ways. First, the Plaintiff asserts that he was taken to the emergency room on Friday, November 17, 2000, and the emergency room physician wrote his initial prescription. Defendant Roberts makes no mention of the Plaintiff being transported to the emergency room, instead taking the position that the Plaintiff had a scheduled appointment with Dr. Flemming on that date. Plaintiff contends that the two day delay in filling the prescription was unacceptable, and that Capt. Roberts called the emergency room doctor, not Dr. Flemming, in order to have his prescription changed. Capt. Roberts contends that the pharmacy was closed by the time the Plaintiff returned from his appointment that Friday evening, and that no one working at the jail the weekend immediately following was authorized to have the prescription filled. Roberts also informs the Court that the prescription was too expensive, and that he called the doctor's office the following Monday in order to try to obtain cheaper medication. The doctor changed the prescription to a medication the Defendant describes as Bethaprim. Copies of the medicine log show that Plaintiff was administered the Bethaprim intermittently from November 22, 2000, to December 5, 2000. (Defendant's Special Report, Exhibit 3 to Document # 14).

Plaintiff asserts that he was taken to an appointment with Dr. Flemming on an unknown date (but clearly after his November 17, 2000, visit to the emergency room), wherein the doctor wrote the Plaintiff another prescription. However, Capt. Roberts refused to have the prescription refilled. Defendant Roberts states that he never denied the Plaintiff any of his prescription medication.

While the Plaintiff clearly disagrees with the manner in which he was treated from November 15, 2000, to November 19, 2000, he does not dispute that his prescription was filled and

11

administered to him on the dates and times listed in the Defendant's medicine log. Further, while Plaintiff also contends that as of February 15, 2001, "they" were refusing to refill his prescription, he does not state that Defendant Roberts was in any way responsible.

The Court does not find that the Defendant was deliberately indifferent to the Plaintiff's medical needs between November 15, 2000, and November 17, 2000. Defendant Roberts attempted to retrieve prescription medication from Jefferson County Jail, but was refused. Paramedics were called to check the Plaintiff. On November 17, 2000, Defendant Roberts ensured that Plaintiff was transported to Dr. Flemming's office for an appointment. Likewise, the delay in filling the prescription over the weekend of November 18 and 19, while negligent, perhaps, cannot be said to be due to the deliberate indifference of Capt. Roberts. Indeed the evidence tends to suggest that Capt. Roberts was unaware of the outstanding and unfilled prescription until the following Monday morning. Plaintiff offers no evidence to show that Roberts was contacted by jail staff or otherwise informed of the need to fill the prescription on the weekend.

Plaintiff's claim that "they" refused to refill his medication is not actionable because he does not name anyone as a defendant. Vague, general or conclusory allegations are insufficient to merit relief under § 1983. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Again, the evidence fails to establish that Capt Roberts was aware of or participated in the failure to fill the prescription.

## Conclusion

This Court concludes that Plaintiff's claims for injunctive relief are due to be dismissed as moot. Furthermore, there are no genuine issues of material fact concerning the Plaintiff's

need for prescription medication and the circumstances surrounding it; and Defendant Roberts is entitled to judgment as a matter of law on Plaintiff's cruel and unusual punishment claim.

The Court will grant summary and final judgment for the Defendant by separate order.

Done this ___31st___ day of March, 2002.

_____
Chief United States District Judge
U.W. Clemon